UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY W. FIFE, Personal Representative
of the Estate of Victor D. Fife,

      Plaintiff,

v.

FORD MOTOR COMPANY *et al.*,

      Defendants.

Case No. 14-cv-14586
Hon. Matthew F. Leitman

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT (ECF #25) AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT (ECF #18)

### INTRODUCTION

Victor D. Fife ("Fife") worked for Defendant Ford Motor Company ("Ford") and participated in Ford's General Retirement Plan (the "Plan"). When Fife retired, he began receiving monthly pension benefits under the Plan. In 2012, Fife attempted to make an election to receive a lump-sum payment of his remaining pension benefits in lieu of continued monthly payments. In order to receive the lump-sum payment, Fife was required to complete an election form that accurately reflected both (1) Fife's personal information that was used to calculate the amount of his lump-sum payment and (2) the amount of the lump-sum payment to which Fife was entitled under the Plan. Fife completed an election form, but the form

1

included an inaccurate lump-sum payment amount that was based upon Ford's erroneous belief that Fife's wife (who had been entitled to survivorship benefits under the Plan) was still alive. Accordingly, Defendant Ford Motor Company General Retirement Plan, Retirement Committee (the "Committee") deemed Fife's election ineffective and moved Fife to a new election period so he could consider whether to accept a corrected lump-sum payment amount. Unfortunately, Fife died before he received the corrected election form, and he thus never effectively elected to receive the lump-sum payment.

Fife's estate (the "Estate") has now filed this action against the Committee and Ford (collectively, "Defendants"). In its motion for judgment on the administrative record, the Estate argues that (1) Ford, acting through the Committee, "offered" to make the lump-sum payment listed on Fife's election form (i.e., the inaccurate amount), (2) Fife "accepted" that "offer," and (3) Fife's "acceptance" is binding under the Plan. (*See* ECF #18.) In their motion for judgment on the administrative record, Defendants argue that their actions were fully consistent with the Plan and were neither arbitrary nor capricious. (*See* ECF #25.) The Court agrees with Defendants. As explained below, the Committee adhered to the Plan and reasonably determined that Fife did not effectively elect to receive a lump-sum payment. The Court therefore **DENIES** the Estate's motion for judgment and **GRANTS** Defendants' motion for judgment.

2

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Plan and the Committee's Discretionary Authority to Administer the Plan

Eligible Ford employees are entitled to participate in the Plan, which governs the benefits that employees receive upon their retirement. (*See* the Plan, ECF #20 at 2-160, ECF #21 at 1-81, ECF #22 at 1-94, Pg. ID 203-536.) Among other things, the Plan defines how Ford employees become eligible to participate in the Plan; provides participants choices with respect to the payment of their benefits (i.e., monthly, with a certain portion of benefits set aside as a survivorship benefit for an employee's spouse, or, during limited windows, as a lump-sum); and contains precise formulae for calculating the amount of monthly and/or lump-sum payments owing to a participant. (*See* the Plan at Articles VI – XI, ECF #20 at 57-98, Pg. ID 258-299; *see also* the Plan at Appendix L at ECF #22 at 88-91, Pg. ID 530-533.)

The Plan is administered by the Committee. (*See* the Plan at Art. XIII, ECF #20 at 109-112, Pg. ID 310-313.) The Plan vests the Committee with "the discretionary authority to administer the benefit structure of the Plan, and to…construe and interpret the Plan." (The Plan at Art. XIII, §2, ECF #20 at 109, Pg. ID 310.) The Plan further provides that "[b]enefits under th[e] Plan will be paid only if the Committee decides in its discretion that the claimant is entitled to them." (*Id.*)

3

**B.     Fife Works at Ford and Upon His Retirement Receives Monthly Pension Benefits Under the Plan**

Fife worked at Ford for approximately twenty-five years. Upon his retirement in 1979, Fife began receiving pension benefits under the Plan. (*See* Defendants' Answer to the Estate's Complaint, ECF #10 at ¶11, Pg. ID 21.) Fife initially elected to receive his pension benefits in the form of a monthly payment with a portion of his benefits set aside so they could be paid to his wife Julia as a "survivorship" benefit upon his death. (*See* Administrative Record, ECF #19 at 16, Pg. ID 100.) Based on this election, Fife received a monthly pension benefit of $692.06, and upon his death, Julia would receive $443.11 until her death. (*See id.*)

**C.     Fife's Wife Passes Away, But Fife Neither Completes the Plan's Cancellation of Surviving Spouse Benefits Form Nor Submits a Copy of Her Death Certificate**

The Plan provides that when a participant wishes to cancel survivorship benefits owing to a deceased spouse, the participant must submit "evidence satisfactory to the Committee of the [s]pouse's death." (The Plan at Art. IX, § 1(D), ECF #20 at 81, Pg ID 282.) The Committee requires a participant to provide such "evidence" in the form of (1) a Cancellation of Surviving Spouse Benefits Due to Death form (the "Cancellation Form") and (2) a copy of the spouse's death certificate. (*See, e.g.,* Ford Correspondence, ECF #19 at 114, Pg. ID 198.)

On September 24, 2011, Fife's wife passed away. Fife did not provide a copy of her death certificate to the Committee nor did he complete the Cancellation

Form at that time. Instead, Fife's daughter claims that "within weeks" of her mother's death, her family accessed Fife's "online user account" and notified Ford that Fife's wife had died. (Declaration of Victoria Sue Greene, ECF #19 at 55, ¶4, Pg. ID 139.) The Estate has not provided any documentary evidence – such as a confirmation or screen shot – that Ford or the Committee ever received this online notification. Nor has the Estate provided any evidence that Fife or any member of his family submitted to Ford a death certificate or the Cancellation Form at that time.

The Committee says that it never received the notice that Fife's family allegedly provided. (*See, e.g.,* Committee Correspondence, ECF #19 at 114, Pg. ID 198.) And the Committee contends that, in any event, survivorship benefits may not be canceled via the online tool that Fife's family allegedly accessed. (*See id*.) Notably, even after the date that Fife's daughter claims her family notified Ford that Fife's wife had died, Fife continued to receive the same monthly benefit payment that he received before the alleged notification – i.e., an amount calculated based on the assumption that Fife's wife was alive and entitled to survivorship benefits. (*See* Fife's Election Kit, ECF #19 at 16, Pg. ID 100.)

### D. The Plan Allows Eligible Participants to Elect a Lump-Sum Payment of Benefits in the Manner Prescribed by the Committee

The Plan created certain "windows" during which eligible participants could elect to receive a lump-sum payout equal to the present value of their remaining

5

pension benefits (including survivorship benefits, if applicable) in lieu of their monthly benefit payments. One such window opened on August 1, 2012, nearly a year after the death of Fife's wife. (*See* The Plan at Appendix L, ECF #22 at 88-91, Pg. ID 530-533.)

The Plan provided that any eligible participant wishing to elect a lump-sum payment under this window must "submit to [Ford] a completed and signed election form, *in such manner as may be required by the Committee.*" (*Id.* at § 1(C)(1), ECF #22 at 89, Pg. ID 531) (emphasis added.) The Committee, in turn, prepared an election kit to be reviewed by eligible participants, and the Committee required participants who wished to elect the lump-sum payment to complete an election form stating their election decision. (*See e.g.,* Fife's Election Kit, ECF #19 at 11-45, Pg. ID 95-129.)

The election form identified the amount of each participant's expected lump-sum payment, but, importantly, the form expressly stated that the listed payment amount was an *estimate* based upon the facts and circumstances then known to the Committee and was subject to change:

> **Important Notice:**
>
> Calculations detailed on this statement *estimate the pension benefit you may receive* under the lump sum payment opportunity based on present plan provisions and the assumptions shown. These calculations are subject to corrections for errors in your record or otherwise. If this estimate varies from your actual

6

> *benefit, the applicable plan document and plan rules will control the final determination concerning your benefits under the plan.*

(*Id.* at 24-25, Pg. ID 108-109) (italic emphasis added; bold emphasis in original.)

The election kit, and the election form itself, repeatedly told participants that in order to elect the lump-sum payment, they must (1) verify the accuracy of their personal information and (2) contact the Committee if there were any errors. It was essential for the Committee to confirm that the personal information listed in the election kit and on the election form was accurate because the Committee calculated each participant's listed lump-sum payment amount, in part, based upon that information. (*See id.* at 13, Pg. ID 97.) Thus, the Committee needed accurate personal information in order to ensure that each participant who elected the lump-sum payment option received the amount of benefits to which he or she was actually entitled under the Plan.

The Committee repeatedly informed participants in both the election kit and on the election form that if the personal information used to calculate the lump sum was incorrect, the lump-sum amount could change and the participant may be sent a new election kit and moved to a new election period. For example:

- The cover letter that the Committee included with the election kit instructed participants to "call the Pension Lump Sum Information Center immediately for any corrections to [their] personal information. *A new election kit may*

7

*be required, and if so, [the participant] may be moved to a later election period.*" (*Id.* at 12, Pg. ID 96) (emphasis added.)

- The "Benefit Election Checklist" the Committee provided in the election kit stated that to elect the lump-sum payment, a participant "*must*…[v]erify [his or her] personal data." (*Id.* at 13, Pg. ID 97) (emphasis added). The participant was told that "it's important to verify [the participant's] personal data, *as certain types of personal data may change the value of [the] benefit.* **If information is inaccurate, please contact the Pension Lump Sum Information Center**." (*Id.*) (italic emphasis added; bold emphasis in original.)

- The election form required the participant to verify his or her address, date of birth, and marital status, and instructed the participant that "[i]f [the participant has] corrections to personal information, a new Election Kit may be required." (*Id.* at 23, Pg. ID 107.)

- The election form told participants that "[a]lthough [Ford] has made every reasonable effort to assure the information in [the election kit] is accurate, [Ford] will not be responsible if any of this information is determined to be inaccurate." (*Id.* at 25, Pg. ID 109.)

- Finally, the election form required each participant to "acknowledge" certain understandings about the lump-sum offer, including that "if [the participant's] election is *confirmed by [Ford]* and the [participant] die[s], [the] election will remain valid." (*Id.* at 27, Pg. ID 111) (emphasis added.)

E. **The Committee Sends an Election Kit to Fife That Contains Significant Errors, and Fife Attempts to Elect An Erroneous Lump-Sum Amount**

Ford sent Fife his election kit on November 30, 2012. (*See id.* at 11, Pg. ID 95.) The election kit – which included each and every statement in the bullet

8

points above – informed Fife that his estimated lump sum payment amount was $44,582.30. (*See id.*) The kit instructed Fife that in order to effectively elect to receive the listed amount, he would have to verify the accuracy of the all of the personal information listed in the kit – i.e., the information from which the Committee calculated the listed lump-sum amount. (*See id.* at 13, Pg. ID 97.) The election form also told Fife that the listed lump-sum amount was "subject to corrections for errors in [his] record or otherwise" (*id.* at 24, Pg. ID 108) and that "corrections to his personal information" may require the Committee to send him a new election kit and move him to "a later election period." (*Id.* at 12, Pg. ID 96.)

Fife's election form included two significant errors. It listed the wrong amount for both Fife's monthly pension benefit and the lump-sum payment to which he was entitled. Both of these errors were based upon the Committee's erroneous belief that Fife's wife was still alive. More specifically, the form told Fife that he was entitled to a monthly benefit payment of $692.06, and the form indicated that this amount was based, in part, on the assumption that Fife's wife was alive and still entitled to a survivorship benefit. (*See id.* at 16, Pg. ID 100.) But because Fife's wife had died, it was no longer appropriate for the Committee to set aside a portion of his benefits to fund his wife's survivorship benefit. Thus, given the death of Fife's wife, he was actually entitled to receive a larger monthly benefit payment than the monthly payment amount listed on his election form.

9

(*See, e.g.,* Pension Benefit Adjustment Letter, ECF #19 at 7-8, Pg. ID 92.) Second, the lump-sum payment of $44,582.30 listed on Fife's election form was wrong.[1] This error, too, was caused by the Committee's erroneous assumption that Fife's wife was still alive.

On February 5, 2013, Fife completed the election form and informed the Committee that he wanted to receive the listed lump-sum benefit amount. (*See* Fife's Election Kit, ECF #19 at 29, Pg. ID 113.) In the "information verification" portion of the election form, Fife corrected the Committee's misimpression that his wife was still alive; he told the Committee that his "present marital status" was "widowed." (*Id.* at 21, Pg. ID 105.)

### F. The Committee Rejects Fife's Purported Election of the Inaccurate Lump-Sum Payment

On February 28, 2013, the Committee informed Fife that his attempt to elect the lump-sum payment was not valid because the information used to calculate his lump-sum was inaccurate:

> Because the lump sum pension calculation you originally received was based on a benefit payable for both you and your spouse's lifetimes, a correction to your Ford Motor

---

[1] The Estate suggests that the lump-sum number was erroneously low – i.e., that Fife was actually entitled to a higher lump-sum payment. (*See* the Estate's Motion, ECF #18 at 16-17, Pg. ID 82-83.) The Defendants argue just the opposite – that the listed lump-sum was too high. (*See* Defendants' Motion, ECF #25 at 8, Pg. ID 557.) The evidence in the record does not conclusively resolve this dispute either way. But neither side contends that the lump-sum listed in the election form was accurate.

10

> Company [] General Retirement Plan [] pension payment Election Kit is required. To ensure you have time to make an informed decision, you have been moved to a later election period.

(Committee Correspondence, ECF #19 at 5, Pg. ID 89.) The Committee then told Fife that he was "no longer part of the election period previously communicated to [him]" and that he would "be notified in advance of [his] new election period." (*Id.*)

### G. Fife Passes Away Before He Receives the Committee's Rejection of His Lump-Sum Election

Sadly, Fife passed away on February 22, 2013 – *before* he received the Committee's February 28, 2013, rejection of his election of the lump-sum amount.[2] And because Fife passed away, he was never able to participate in his new election period, and he was never able to effectively elect to receive a lump sum payout.

### H. The Committee Rejects a Claim For Benefits From the Estate

On January 17, 2014, the Estate sent correspondence to the Committee requesting that it pay the Estate the $44,582.30 lump-sum amount listed on the election form that Fife signed and returned. (*See* Estate Correspondence, ECF #19 at 2-3, Pg. ID 86-87.) On February 11, 2014, the Committee denied the Estate's request, explaining that Fife's election form was invalid because the proposed lump-sum amount was based on inaccurate information and did not accurately

---

[2] It does not appear that at the time the Committee sent Fife this correspondence, it knew he had died the week prior.

11

reflect the amount of benefits Fife was actually entitled to receive under the terms of the Plan. (*See* Committee Correspondence, ECF #19 at 46-48, Pg. ID 130-132.) The Committee told the Estate that:

> Mr. Fife's original lump sum window election period was open from December 14, 2012 through March 13, 2013. Mr. Fife's initial election kit was invalid because it reflected survivorship coverage for a deceased spouse. Mr. Fife was moved to a later election period so that a Cancellation of Surviving Spouse Benefits Due to Death form could be submitted and the lump sum could be recalculated. Unfortunately, Mr. Fife passed away before his new election period opened. Upon his death, Mr. Fife's lump sum opportunity ended. Since there is no longer a surviving beneficiary, all benefits ceased upon Mr. Fife's death on February 22, 2013. Your claim on behalf of the estate of Victor D. Fife is denied.

(*Id.* at 47, Pg. ID 48.)

The Estate thereafter lodged an internal appeal of the decision with the Committee, and the Committee rejected the appeal on June 3, 2014. (*See* Minutes of Employee Benefits Committee Meeting, ECF #19 at 108-111, Pg. ID 192-195.) The Estate then filed this civil action. The parties have now each moved for judgment on the administrative record. (*See* ECF ## 18, 25.)

## **GOVERNING LEGAL STANDARD**

Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), authorizes an individual to bring a civil action "to recover benefits due to him under the terms of [his] plan, to enforce

[his] rights under the terms of the plan, or to clarify [his] rights to future benefits under the terms of the plan." Where, as here, a plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan (*See* the Plan, Art. XIII, §2, ECF #20 at 109, Pg. ID 310), the Court reviews the administrator's action under the "arbitrary and capricious" standard of review. *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). Yet, arbitrary and capricious review "is not ... without some teeth." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (internal quotation marks and citation omitted). Indeed, a district court reviewing a plan administrator's determination under the arbitrary-and-capricious standard does not sit merely to "rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). The Estate has the burden of demonstrating that the Committee acted arbitrarily or with caprice. *See Senzarin v. Abbott Severance Pay Plan for*

*Employees of KOS Pharmaceuticals*, 361 Fed. App'x 636 (6th Cir. 2010) (citing *Rochow v. Life Ins. Co. of North Am.*, 482 F.3d 860, 865 (6th Cir. 2007)).

## ANALYSIS

### A. The Estate Has Failed to Show That the Committee's Decision to Deny Fife Benefits Was Arbitrary and Capricious

Under the applicable provisions of ERISA, "the terms of the Plan" control whether Fife was entitled to benefits. *Kennedy v. Plan Administrator for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1132(a)(1)(B)). Here, the Plan clearly states that an eligible participant wishing to elect a lump-sum payment must "submit…a completed and signed election form, *in such manner as may be required by the Committee*." (The Plan at Appendix L, § 1(C)(1), ECF #22 at 91, Pg. ID 533) (emphasis added). The "manner … required by the Committee" was the completion of an election form that *accurately* listed both the participant's personal information and the amount of the lump sum that the participant was entitled to receive under the Plan.

This "manner" – requiring that lump-sum benefits be paid only after a participant completed an accurate election form – was well within the scope of the Committee's express authority under the Plan and was entirely reasonable. Indeed, if a participant were permitted to elect an *inaccurate* lump-sum amount, then other Plan participants could potentially be deprived of funds to which they were rightfully entitled. Such a result would be fundamentally inconsistent with the

14

Committee's role as fiduciary for *all* Plan participants. *See, e.g., Livingston v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F. Supp. 108, 118 (E.D. Mich. 1995) ("ERISA Trustees are restrained by the fiduciary duties to protect the assets of the trust for the benefit of all participants and beneficiaries of an employee benefit plan"). Likewise, the "manner" chosen by the Committee here helped to ensure that participants made the important decision of whether to choose a lump-sum payment over monthly payments based upon fully accurate information. Simply put, the Committee did not act in an arbitrary and capricious "manner" when it created the election kit and form, decided to pay only lump-sum amounts that were confirmed as accurate, and later rejected Fife's attempt to elect an inaccurate lump-sum amount that was calculated based on erroneous information.

The Estate argues that even if the Committee reasonably rejected Fife's effort to elect an inaccurate lump-sum amount, the Committee unreasonably later refused to pay to the Estate the correct lump-sum amount to which Fife would have been entitled. The Estate argues, in effect, that the Committee should have treated Fife's attempt to elect the inaccurate lump-sum as a clear indication that he would have (or even intended to) elect the correct lump-sum amount. But it was not unreasonable for the Committee to refuse to construe Fife's attempted election in this manner. As explained above, Fife made his attempted election based upon

15

erroneous amounts listed in his election form – including, importantly, an erroneously-low listing of the monthly pension benefit to which he was entitled. The Committee had no way to know with certainty whether Fife would have elected the corrected lump-sum if he had known that he was entitled to a larger monthly benefit payment. Under these circumstances, the Committee reasonably declined to make a lump-sum payment to the Estate.

Finally, the Estate argues that the Committee was required to make the lump-sum under the following language in the Plan:

> If a completed and signed election form from a Lump Sum Window Eligible Member is received by the Company during such Member's Lump Sum Window Election Period, and such Member dies prior to the payment of such benefits, such election shall be effective.

(The Plan at Appendix L, § 1(C)(1), ECF #22 at 91, Pg. ID 533.) The Estate says that the Committee received Fife's election form during his election period and that his election thus "shall be effective" even though he died before his benefits were paid. But the Estate reads this Plan language out of context. The immediately preceding sentence states that the "completed and signed election form" must be in the "manner as may be required by the Committee." (*Id.*) And, as described above, the Committee "required" the timely submission of an *accurate* election form – something Fife did not do. Thus, the Plan language cited

16

by the Estate does not oblige the Committee to make the lump-sum payment to the Estate.

## B. The Estate Cannot Establish an Entitlement to Benefits Through Reliance on Common-Law Contractual Principles

The Estate argues that the Committee's denial of benefits was arbitrary and capricious because the decision was "in disregard of the most elementary principles of contract law. After all, the most basic contract principles dictate that offer + acceptance = contract." (The Estate's Motion, ECF #18 at 11, Pg. ID 77.) According to the Estate, "[a]ll that was required of [Fife] was to complete the [election form] and return [it] to Ford," and when Fife did so, he "accepted" the lump-sum "offer" that was included on the election form. (*Id.* at 12, Pg. ID 78.)

This argument fails for two reasons. First, the relationship between Fife and the Committee is governed is governed by ERISA, and Fife may not recover under a breach of contract theory. *See Cattin v. General Motors Corp.*, 995 F.2d 416, 425 n.6 (6th Cir. 1992) ("Common law contract claims are pre-empted by ERISA") (citing 29 U.S.C. § 1144).

Second, and in any event, the "offer + acceptance = contract" argument fails on its own terms. Even if the election form could be construed as an "offer," it was a conditional "offer" to make a lump-sum payment if and only if, among other things, the personal information and payment amount listed on the form were

17

entirely accurate. They were not. Thus, Fife could not have, and did not, "accept" the "offer" made by the Committee.

## C. The Estate is Not Entitled to Benefits on an Equitable Estoppel Theory

The Estate finally argues that it is entitled to benefits on the basis of equitable estoppel. This estoppel claim seeks the same relief as the Estate's denial-of-benefits claim under § 502(a)(1)(B) (*i.e.,* the payment of the lump-sum included on Fife's election form). But the Sixth Circuit prohibits plaintiffs from "repackaging" an unsuccessful § 502(a)(1)(B) claim into an identical claim seeking equitable relief. *See Rochow*, 780 F.3d at 372. An unsuccessful plaintiff denied benefits under § 502(a)(1)(B) may only bring a separate claim for equitable relief where that equitable claim "is based on injury separate and distinct from the denial of benefits or where the remedy afford by Congress … is otherwise shown to be inadequate." *Id.* There is no such separate and distinct injury here, and the Estate has not shown its remedy under § 502(a)(1)(B) is inadequate.

The Estate responds that it is entitled to pursue its equitable estoppel claim because that claim "seeks to obtain injunctive relief based on a systematic *plan-wide* mishandling of claims." (The Estate Reply Br., ECF #27 at 7-8, Pg. ID 586) (emphasis added.) And the Estate says Sixth Circuit precedent allows plaintiffs to pursue such plan-wide equitable relief. *See, e.g., Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710, 717-718 (6th Cir. 2005) (holding that "district court

18

erred in characterizing [plaintiffs'] fiduciary-duty claims as repackaged individual-benefits claims because their claims for breach of fiduciary duty seek plan-wide injunctive relief, not individual-benefit payments").

But the Complaint here is devoid of any such "plan-wide" allegations. It says nothing at all about other plan members and alleges only that Defendants mishandled Fife's claim. (*See* Complaint, ECF #1 at ¶¶ 51-60.) And to the extent the Complaint seeks equitable relief, it does so for Fife *only*, not for all other plan members. (*See id.* at "Relief Requested" ¶B.) The Estate has simply not brought a claim for relief that would apply to all Plan participants, and the Estate is therefore is not able to seek relief on any equitable theory, including estoppel.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment (ECF #25) is **GRANTED**, and the Estate's Motion for Judgment (ECF #18) is **DENIED**.

Dated: October 27, 2015

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 27, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113